# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

October 16, 1998

Cecil W. Crowson
Appellate Court Clerk

PENELOPE LYNN RAYBURN,    )
      )
    Plaintiff/Appellant,    )
      )
      )    Appeal No.
      )    01-A-01-9710-CH-00548
VS.      )
      )    Cheatham Chancery
      )    No. 8718
GREGORY SHANE RAYBURN,    )
      )
    Defendant/Appellee.    )

### APPEALED FROM THE CHANCERY COURT OF CHEATHAM COUNTY
### AT ASHLAND CITY, TENNESSEE

### THE HONORABLE LEONARD W. MARTIN, JUDGE

JERRY W. HAMLIN
110 Frey Street
Ashland City, Tennessee 37015
    Attorney for Plaintiff/Appellant

STEVE D. GIBSON
112 S. Main Street
Ashland City, Tennessee 37015
    Attorney for Defendant/Appellee

### AFFIRMED AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
KOCH, J.
CAIN, J.

# O P I N I O N

The trial court granted the husband an absolute divorce and gave him custody of the parties' three children. The wife argues on appeal that the trial court erred by determining the issue of child custody without considering the mandatory statutory factors found in Tenn. Code Ann. § 36-6-106. We affirm the trial court.

## I. Marriage and Divorce

Gregory Shane Rayburn and Penelope Lynn Harding married on August 30, 1986. Two sons and one daughter were born to the couple: Joshua, born November 14, 1987; Jonathan, born November 14, 1988, and Summer, born July 15, 1993. During the first ten years of their marriage, Mr. Rayburn worked at a number of jobs, including work as a truck driver, while Ms. Rayburn took care of the home and children.

In April of 1996, Ms. Rayburn began working part-time at the post office. On May 16 of the same year, Mr. Rayburn observed Ms. Rayburn kissing another postal employee, John Wayne Shearon at the back door of the post office. On June 1, 1996, Ms. Rayburn moved out of the marital home, taking the three children with her. She filed for divorce several days later, claiming that the parties had encountered irreconcilable differences in their marriage, or in the alternative, that Mr. Rayburn had been guilty of inappropriate marital conduct.

Mr. Rayburn answered, and asked for sole custody of the three children. He denied that he had been guilty of any inappropriate conduct, and claimed that his wife had developed an inappropriate relationship with Mr. Shearon. We note that while the present case was pending, Ms. Shearon filed for divorce against Mr.

Shearon, naming Ms. Rayburn as her husband's lover in the complaint. The Shearons ultimately agreed to proceed on an uncontested basis, and the trial court granted them a divorce on July 14, 1997.

The Rayburn divorce was heard on August 19 and 20, 1998. Eight witnesses appeared and were subjected to vigorous cross-examination. The witnesses included the parties themselves, Ms. Rayburn's two sisters, a friend of Ms. Rayburn's, Mr. Shearon's best friend, Ms. Shearon, and Mr. Rayburn's mother. Ample evidence was presented as to infidelities on the part of Ms. Rayburn, which we feel it unnecessary to summarize here. There was no evidence of any improper conduct by Mr. Rayburn.

During the cross-examination of Ms. Rayburn, she repeatedly denied that there was anything improper in her relationship with Mr. Shearon, or that she was "seeing" or "dating" him. She also denied ever spending the night with him, despite eyewitness accounts that were highly suggestive of many nights of intimate contact between them. The trial court warned her to be candid in her testimony, and stated that her credibility would be a factor in the court's decision on custody, but this did not deter her from continuing to testify that she and Mr. Shearon were only friends.

At the conclusion of the hearing, the trial court awarded Mr. Rayburn a divorce on the ground of inappropriate marital conduct, and also awarded him custody of the three children. Ms. Rayburn was granted visitation rights, and was ordered to pay child support. This appeal followed.

## II. Matters of Statute

The trial court is vested with wide discretion on questions of child custody, and the appellate court will not interfere, except upon a showing that the trial court abused that discretion. *Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. App. 1993). We must also presume that the court was correct in finding the husband to be the most suitable person to exercise custody, unless the evidence preponderates otherwise. Rule 13(d), Tenn. R. App. Proc.

The appellant's primary argument is that the trial court did not consider the statutory factors for determining child custody, and that it did not provide any logical basis for its decision, except for its determination that the wife lacked credibility because of her unwillingness to answer embarrassing questions.

She cites us to Tenn. Code Ann. § 36-6-106 which states:

**Child custody.--** In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:

(1) The love, affection and emotional ties existing between the parents and child;
(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;
(4) The stability of the family unit of the parents;
(5) The mental and physical health of the parents;
(6) The home, school and community record of the child;
(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;
(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; and
(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child.

- 4 -

We note that the statute indicates that these factors are not all applicable in every case, and that there may be other applicable factors that are not specifically described.

If, as the appellant insists, the trial court did not consider the factors that were relevant in reaching its decision, that would be abuse of its discretion. However we can presume such consideration if the record contains evidence sufficient for the trial court to determine where the best interest of the children would lie. Without going into too much detail, we can state that there is enough evidence in this record for that determination.

We have read the transcript of the trial, and we are satisfied that there are strong ties of love and affection between the children and both parents, although the middle child, Jonathan, was angry at his mother, and blamed her for the breakup of the family. We are also satisfied that while the mother had been the primary caregiver during the marriage and the father had assumed the role of breadwinner, both parents have proven themselves to be capable caregivers during the period of separation.

### III. Comparative Fitness

Fitness for custodial responsibilities is largely a comparative matter. *Edwards v. Edwards*, 501 S.W.2d 283 (Tenn. App.1973); *Bah v. Bah*, 668 S.W.2d 663 (Tenn. App. 1983). Thus the grant of custody to one parent is not equivalent to a finding that the other parent is unfit, but only that the best interest of the child is served by placing him or her with the parent who is more capable of exercising that responsibility.

If the factors we have so far referred to place the parties in a fairly even balance, the question of character must tip that balance in favor of Mr. Rayburn. As this court said in *Gaskill v. Gaskill*, 936 S.W.2d 626, 634 (Tenn. App. 1996), "[a] parent's honesty reflects on his or her fitness to be a good custodian." Thus it was not error for the trial court to consider the wife's truthfulness under oath in determining child custody.

A child learns as much by example as by precept, and it is up to the parent to set a good example. Ms. Rayburn (now Ms. Shearon) did not set a good example when she began an affair with a married man, and moved out of the marital home, taking the three children with her, and she did not set a good example when she rejected her husband's attempts at reconciliation. While, as this court said in *Varley v. Varley,* 934 S.W.2d 659, 666-7 (Tenn. App. 1996), "a parent's sexual infidelity or indiscretion does not, ipso facto, disqualify that parent from receiving custody of his/her children," such acts may be relevant to the question of character, and thus to comparative fitness.

The appellee also points out that the wife did not take any steps to protect her children from her own father, Neal Harding, a convicted child molester, until the husband "raised a fuss" about it. Since he is "a person who resides in or frequents the home of a parent" the Court has discretion under the statute to consider the character and behavior of Neal Harding. Tenn. Code Ann. § 36-6-106(9).

Taking these and other factors into account, we cannot say that the evidence preponderated against the determination of the trial court.

**III.**

The order of the trial court is affirmed. Remand this cause to the Chancery Court of Cheatham County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
WILLIAM B. CAIN, JUDGE